## LAUB et al. vs. BURNETT et al.

1. An Order in Chancery was had, authorizing the husband and trustee to sell certain real estate, belonging to the separate estate of the wife. The wife afterwards becoming opposed to the sale, defendant advised her to file a bill to enjoin the husband from such sale and consented to act as her trustee, or *prochiem ami*, in that proceeding, and counsel was employed to file such bill. The defendant subsequently bought the property from the husband, and paid him the money, and, being about to dispossess the wife, etc., she applied for, and obtained, an injunction, restraining him from disturbing her posses-sion, etc. On the coming in of the answer of defendant, admitting these facts, the injunction was dissolved. *Held*, that this was error—the injunc-tion ought to have been retained.

2. One can not, by his answer, charge and discharge himself.

3. New matter. not in response to the allegations in the bill, can not be con-sidered in an application to dissolve an injunction, especially when such new matter is immaterial.

In Equity, in Floyd Superior Court. Decided by Judge HAMMOND, at chambers, on the 22d of May, 1860.

Maria Laub exhibited her bill in equity, in Floyd Superior Court, against George P. Burnett and another, in which she alleged:

That she was the wife of Andrew M. Laub, and that her maiden name was Maria Norbuck; that, at the time of her intermarriage with the said Andrew M. Laub, she had, and was possessed in her own right, and as her sole and separate estate, the sum of one thousand dollars in money; that, on the 30th of January, 1851, when the complainant and her

said husband determined to settle in the city of Rome, and desiring to' have said money invested in some permanent property, complainant, by petition to the Hon. John H. Lumpkin, then judge of the Cherokee Circuit, and *ex officio* chancellor, obtained an order from the said chancellor, appointing the said Andrew M. Laub, her trustee, and authorizing him to invest said money in the purchase of a part of lot number 3, Etowah division of the city of Rome, twenty-three feet fronting on Broad street, and extending back one hundred and thirty-two feet; the same being the place on which the said Andrew M. Laub then resided and transacted business; that pursuant to said order, the said trustee did purchase said town lot, and with the income and proceeds of the same did, by virtue of another order of the same chancellor, purchase the west half of city lots numbers 4 and 21, in the Etowah division of the city of Rome, lying thirty-two feet front, and running back to Court street, to which city lots deeds were duly executed to said Andrew M. Laub, as trustee for the complainant, conveying to said Andrew M. Laub the said city lots in trust for the use and benefit of the complainant and her then, and future, children by the said Andrew M. Laub, free from the debts, liabilities and contracts of the said Andrew M. Laub, then in existence, or that might thereafter exist; that the said city of Rome was rapidly improving in wealth and population, and that said city lots, from their central location in said city, were then, and would probably continue to be, valuable; that for a year or more prior to the filing of the bill, the said Andrew M. Laub was dissipated and indolent, doing nothing for the support of his family, and leaving the same to be done by the complainant, which she succeeded in doing, partly by 'the labor of her own hands, and partly by the sale of furniture and wares, belonging solely to her; that the said Andrew M. Laub had never given bond and security for the faithful performance of said trust; that, for some months immediately anterior to the filing of the bill, the said Andrew M. Laub had been threatening to sell and dispose of said city lots, declaring that when he sold them and got the money in his pocket, the complainant and her children might go to hell; that George P. Burnett, being fully aware of all the facts set forth in the bill, advised complainant to file a bill in equity against the said Andrew M. Laub, and obtain an in-

junction, restraining the said Andrew M. Laub from selling said city lots, as he had repeatedly threatened to do; that pursuant to the advice of the said Burnett, the complainant actually employed counsel to file such bill, but before the same was finished, the said Burnett bought said city lots from the said Andrew M. Laub, for one thousand or twelve hundred dollars, or some other small and inconsiderable sum; that said Burnett bought the said city lots with a knowledge of all the facts aforesaid, and with a knowledge of said trustee's habits and threats aforesaid, and after he, the said Burnett, had deceitfully advised complainant to obtain an injunction, restraining such sale; that said Laub sold said city lots to said Burnett without authority, and against the wishes and repeated remonstrances of the complainant, of all which the said Burnett had full notice before he purchased said lots; that, since said sale of said lots to Burnett, Laub has gone to parts unknown to complainant, taking the proceeds of the sale with him, and leaving complainant and five children (four of whom are females and unable to support themselves) in a destitute condition; that the said Burnett has taken violent possession of one of said lots, and rented the house on the same to William Morris, and is receiving, and appropriating to his own use, the rents and profits of the same, and also threatens to dispossess complainant of the other lots; that said Burnett bought said lots from said Laub with a knowledge that Laub was largely insolvent and that he was a gambler, and otherwise dissipated, and that he intended to waste the proceeds of the same; that complainant believed the said Burnett urged complainant to file said bill against Laub in order to induce him under resentment to sell said Burnett said lots at less than their value; that said Burnett has a claim against said trust estate for about three hundred dollars, for which complainant is willing that said city lots should be bound.

The bill prays that the sale from Laub to Burnett may be set aside; that Laub may be removed from the office of trustee of said property; that Burnett may be enjoined from selling said lots or dispossessing the complainant, and that the rent due by Morris may be paid to complainant's trustee; that the bill may be answered, and such other relief measured out to complainant as her case demands.

The injunction prayed for in the bill was issued on the 30th of April, 1860.

The defendant, George P. Burnett, filed his answer to the bill, alleging:

That, according to report, complainant and Andrew M. Laub were never married; that the settlement in trust, made in 1851, as alleged in the bill, defendant was informed and believed, was made to evade the payment of debts, which the said Laub intended to contract in buying cotton, and that the complainant never had any property of her own; that, according to the bill, the whole of the thousand dollars belonging to complainant, was invested in the purchase of the city lot first described in the bill, which city lot has been occupied by complainant's family from the time of its purchase, and that consequently there was no income of said trust estate to be invested in the purchase of the other lots mentioned in the bill; that Andrew M. Laub, at one time, claimed three negroes and personal property, worth one thousand dollars, as trust property under the settlement mentioned in the bill, which claim was untrue and fraudulent; that one of said negroes was sold by the said Laub for one thousand dollars, which money, defendant is informed and believes, complainant got possession of; that defendant had a debt of three hundred dollars against the trust estate, which the trustee had promised to pay out of the proceeds of the sale of the negro aforesaid, but excused himself from complying with said promise, by charging that complainant had stolen the money from him, which the defendant believes was true, or, at least, that the trustee and the complainant disposed of the money by collusion with each other, to avoid the payment of defendant's debts; the defendant admits that said Laub had been trying to sell said lots, and that he may have made use of many improper expressions relative to the proceeds; that said trustee had, on the 26th of December, 1857, obtained an order of the chancellor of trusts to sell said city lots, and defendant bought the same from Laub, by virtue of the authority to sell, conferred by said order; the defendant insists that he gave the full value of the lots; the defendant admits that, whilst the said Laub was trying to sell the lots, he did advise complainant to file a bill to enjoin the sale, and to remove him from the office of trustee, but he gave such advice because complainant proposed to have defendant appointed trustee, which he desired in order to secure his debt aforesaid; that complainant did employ coun-

sel to file such bill, but afterwards abandoned it; defendant did propose and still proposes that, if complainant will pay his debt aforesaid, and also repay the purchase money, paid by defendant to Laub for the city lots, defendant will reconvey the lots to complainant; defendant denies that he took violent possession of one of the houses, but says he applied to complainant for the key, and she said it was lost, whereupon defendant obtained a key that fitted the lock, and opened the door and took possession; defendant has made no attempt or threats to oust complainant from the other lots, but has told her to look around for another home, and that he would give her time to do so.

The defendant sets up in his answer, that complainant and her family are a nuisance to the city of Rome, and charges them with a great deal of improper conduct, which is not responsive to the bill, and has nothing to do with the case made by the bill.

Upon the coming in of the answer, the defendant's solicitors moved to dissolve the injunction, on the ground that the facts and circumstances, upon which the equity of the bill was based, were denied by the answer.

The judge sustained the motion and dissolved the injunction, and this decision is the error assigned in this case.

D. S. PRINTUP & H. A. GARTRELL, for the plaintiff in error.

UNDERWOOD & SMITH, contra.

By the Court.—LYON, J., delivering the opinion.

1. The defendant admits by his answer, that notwithstanding the order of the 26th of December, 1859, authorizing the husband of complainant to sell the trust property, that the complainant was opposed to the sale by him. That he had advised her to file a bill to enjoin him from such sale; that he had consented to act for her as her trustee, or next friend, in that proceeding, and that counsel had been employed for that purpose, after all of which he bought the property. Such a sale and purchase can not stand, and the injunction was improperly dissolved.

That part of his answer, in which he sets up her with-

drawing or abandonment of those proceedings, and subsequent assent to the sale, is not in response to the allegations in the bill, but is new matter and in avoidance of the equities of the bill, and must be supported on the trial by proof.

2. One can not, by his answer, charge himself and then, by new matter, discharge himself. *More vs. Ferrell*, 1 *Kelly.*

3. That the settlement of this property to the separate use of the wife was not *bona fide*, but to defraud creditors, is also not in response, and if it was, that fact could not avail the defendant, for he is not a creditor of the husband without notice of this settlement, and on the faith of the property being his, nor a *bona fide* purchaser without notice.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be reversed, upon the ground that the Court erred in dissolving the injunction.